# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 5:17-cv-02299-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in 2013, alleging that she became disabled on July 28, 2006. Plaintiff's claims were denied initially and on reconsideration. (AR 78-105.) A hearing was held before an Administrative Law Judge ("ALJ") on May 10, 2016, at which Plaintiff, her attorney, and Vocational Expert ("VE") were present. (AR 38-55.) The ALJ issued a

decision on June 16, 2016, finding that Plaintiff suffered from the following severe impairments: headaches/migraines; degenerative disc disease with bilateral L5 and S1 radiculopathy; and depressive anxiety. The ALJ determined that Plaintiff retained the RFC to occasionally lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently perform all posturals except never climb ladders, ropes, or scaffolds; no unprotected heights or dangerous moving machinery; avoid exposure to loud noise (heavy traffic) and vibration; and limited to moderately complex tasks with a reasoning level of 3 or below and no highly stressful jobs such as taking complaints. (AR 24.). Relying on the testimony of the VE, the ALJ concluded that Plaintiff's RFC did not preclude her from performing her past relevant work as a pharmacy technician. Accordingly, the ALJ determined that Plaintiff was not disabled from July 28, 2006 to the date of the ALJ's decision. (AR 17-34.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 2-7.)

## DISPUTED ISSUES

1. Whether the ALJ provided legally sufficient reasons for discounting the opinion of Plaintiff's treating physician.
2. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational

interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

**DISCUSSION**

**1. The ALJ provided legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician.**

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician Mumtaz A. Ali, M.D. For the following reasons, Plaintiff's contention lacks merit.

**a. Dr. Ali's opinion**

In October 2013, Dr. Ali completed a form entitled "Social Security Disability Evaluation." According to the form, Dr. Ali began treating Plaintiff in 2003 for chronic tension headaches and lumbar facet joint arthropathy and saw Plaintiff every four to six weeks. (AR 298.) Dr. Ali diagnosed Plaintiff with bilateral L5 radiculopathy; chronic myofascial pain syndrome, cervical and thoracolumbar spine; chronic daily headaches (migraine and tension type); sleep disturbance, insomnia type, secondary to chronic pain; impairment in ability to perform activities of daily living secondary to chronic pain and side effects of narcotic medications; and depressive anxiety. (AR 306.) Plaintiff's medication was monitored, and she received frequent and regular trigger point injections for cervical and thoracolumbar myofascial pain syndrome. (AR 298.) Plaintiff continued to suffer from chronic daily headaches that were "typically controlled with Fioricet." (AR 298.) Plaintiff also used Norco and Soma for her musculoskeletal pain complaints and was prescribed Elavil for depression. (AR 298.) Dr. Ali noted that Plaintiff's chronic neck and back pain was "at times, unbearable, and render[ed] her incapacitated for the performance

of activities of daily living and routine household chores, as well as maintaining regular employment." (AR 298.)

Dr. Ali observed that MRI studies of Plaintiff's lumbar spine and brain were "noted to be abnormal" and that an EMG/NCV study of her lower extremities was positive for bilateral S1 radiculopathy. As a result, Plaintiff has pain and numbness in her lower extremities as well as lower back pain. He further noted that Plaintiff's current modes of treatment provided her with "some measure of relief." (AR 298.)

Dr. Ali's report indicates that Plaintiff range of motion in her cervical spine was 40 degrees flexion, 30 degrees extension, 25 degrees right and left lateral flexion, and 60 degrees right and left rotation. Plaintiff had slight restriction of her thoracic spine and exhibited myofascial trigger points/taut bands. Plaintiff had negative straight leg raise test. (AR 299.) Her cranial nerves 1-12 were intact, and she exhibited no ataxia in any extremity. Plaintiff's gait and station were intact, and Romberg test was negative. (AR 301.) Her sensory perception was decreased to fine touch and pinprick in the L5 dermatomes bilaterally. Plaintiff's grip strength was good. Deep tendon reflexes were absent. (AR 302.)

According to Dr. Ali, Plaintiff's physical condition was affected by anxiety, depression, and impaired sleep. In addition, Plaintiff's concentration and attention were impaired as a side effect of narcotic medication. (AR 302.) In Dr. Ali's opinion, Plaintiff was incapable of performing even low-stress jobs because of chronic pain, explaining that Plaintiff's chronic pain impaired her ability to sustain attention and concentration, and under stress, her ability would deteriorate further, resulting in "expressions of irritability, anger, and frustration." (*Id.*)

Regarding Plaintiff's functional limitations, Dr. Ali opined that Plaintiff could frequently carry less than 10 pounds and occasionally carry 10 pounds; sit for 30 minutes at a time; stand for 30 minutes at a time; sit for four hours in an eight-hour workday with normal breaks; and stand for four hours in an eight-hour workday with normal breaks. (AR 303-304.) Further, he opined that Plaintiff could only

occasionally look down, turn her head right or left, look up, or hold her head in static position. (AR 304.) Dr. Ali stated that Plaintiff likely would be absent from work for than four days per month as a result of her impairments or treatment. (AR 305-306.) In addition, Dr. Ali noted that the side effects of Plaintiff's medication included drowsiness, dizziness, nausea, and decreased concentration and attention. (AR 306.) Finally, he indicated that Plaintiff needed to avoid noise, light, dust, heights, climbing ladders, and hazardous machinery. (AR 307.)

In support of his opinion, Dr. Ali cited the 2003 MRIs of Plaintiff's lumbar spine and brain, the 2003 EMB/NCV study, and "clinical signs and symptoms along with physical examination." (AR 305.)

**b. Relevant Law**

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

Here, Dr. Ali's opinions were contradicted by the opinions of the consultative examining physician who opined Plaintiff had no functional limitations and two State

agency medical consultants who opined that Plaintiff could perform work at the light exertional level. (*See* AR 60-65, 100-102, 436-442.) Consequently, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting it. *Orn*, 495 F.3d at 632.

### c. Analysis

The ALJ accorded little weight to Dr. Ali's opinions. In doing so, he explained that Dr. Ali's opinions were not consistent with the record as a whole, which showed "generally unremarkable physical examinations and minor MRI/x-ray/EMG/NCV findings." (AR 28.) The ALJ discussed and summarized the medical evidence. In particular, the ALJ noted that the x-rays of Plaintiff's lumbosacral spine showed narrow disc disease at L5-S1; the 2003 MRI revealed disc degeneration at L2-3, L4-5, and L5-S1 and 1-2 mm concentric disc bulges in the same area; electrodiagnostic studies showed chronic mild to moderate left S1 radiculopathy and mild right S1 radiculopathy; and the 2003 MRI of Plaintiff's brain revealed a 4 mm left mid-parietal white matter high-signal intensity lesion on the flair and T2-weighted sequences, findings that were compatible with white matter ischemic change or demyelinating process such as multiple sclerosis. (AR 25-26 [citing AR 411-415, 420-423].)

The ALJ also discussed Dr. Ali's treatment records. He cited four specific occasions on which Dr. Ali saw Plaintiff for complaints of neck and back pain. In particular, the ALJ noted that treatment records from two appointments in December 2013 indicated that Plaintiff's symptoms were well controlled with current medications and trigger point injections. Plaintiff's range of motion in her cervical and lumbar spine was only slightly decreased. In addition, the ALJ noted that April 2015 treatment records reflected that Plaintiff could perform her activities of daily living "well." Finally, the ALJ noted that in October 2015, Plaintiff complained of daily headaches, neck and back pain. Those treatment notes reflect that Plaintiff's pain was well controlled with current medications and trigger point injections, she

was able to perform activities of daily living well, and examination revealed only slightly decreased range of motion of the cervical spine and moderately decreased range of motion of the lumbar spine. (AR 26-27 [citing AR 309-311, 456-457].)

In addition, the ALJ discussed in detail the findings of Vincent R. Bernabe, D.O., who performed a complete orthopedic consultation of Plaintiff in May 2015. (AR 26-27.) As the ALJ noted, Dr. Bernabe recorded normal clinical findings, including Plaintiff exhibited a normal gait without ataxia or antalgia; her cervical spine range of motion was full and painless; there was no tenderness to palpation in either cervical or thoracic spine; Plaintiff had a full range of motion of the lumbar spine; her straight leg raising was negative; the range of motion in Plaintiff's upper extremities was full; there was no tenderness or other abnormality; Plaintiff's lower extremities revealed no abnormalities and she had full range of motion without pain; Plaintiff's motor strength was intact; her sensation was well preserved; her reflexes were physiologic throughout; and Babinski's sign was negative bilaterally. (AR 433-435.) The only abnormal observation in Dr. Bernabe's report was a finding that Plaintiff exhibited significant tenderness to palpation at the lumbosacral junction. (AR 434.) Based upon his examination, Dr. Bernabe opined that Plaintiff had no exertional limitations. (AR 435-442.)

An ALJ's conclusion that the treating physician's opinion is inconsistent with the record as a whole is a specific and legitimate basis for discounting that opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); *Batson*, 359 F.3d at 1195 (ALJ may discredit treating physician's opinions that are unsupported by the record as a whole or by objective medical findings).

Here, the ALJ's conclusion is supported by substantial evidence in the record. As the ALJ noted, Plaintiff's imaging and diagnostic tests revealed only mild abnormalities – e.g., "mild degenerative changes at L5-S1"; "sacroiliac joints are

unremarkable"; "findings suggestive of mild to moderate left S1 and mild right S1 radiculopathy"; "normal nerve conduction velocity findings"; "normal vertebral heights"; "slight narrowing" at L5-S1 disk; 1-2 mm concentric disc bulges at L2-3, L3-4, L4-5 and L5-S1 "producing minimal to mild compression of the thecal sac at all four levels and minimal foraminal narrowing at all four levels"; no evidence of spondylolysis or spondyloslisthesis; and the "ligament flava and facet joints are normal at all lumbar levels." (AR 414, 422-424.) The record also supports the ALJ's finding that Plaintiff's physical examinations were generally unremarkable. As set forth above, Dr. Bernabe's examination revealed no abnormalities at all and the only clinical findings contained in Dr. Ali's numerous treatment notes is a slight to moderate reduction in Plaintiff's range of motion. (*See* AR 309-317, 321-365, 376-385, 456-509.)

Plaintiff objects that the ALJ improperly characterized the record as containing generally unremarkable findings, and argues that "Dr. Ali's records show [Plaintiff] had a limited range of motion of her cervical spine almost every appointment." (ECF No. 23 at 8.) The treatment records, however, consistently confirm that the limitation to Plaintiff's range of motion in her cervical spine was "slight." (*See, e.g.* AR 309, 311, 313, 315, 317, 321, 323, 325, 462, 464, 466, 480, 486.)

Plaintiff also objects to the ALJ's reliance on Dr. Ali's treatment notes as documenting Plaintiff's symptoms were controlled by medication and trigger point injections. In an apparent effort to suggest that the ALJ relied on a misrepresentative sample of Dr. Ali's notes, Plaintiff points out that Commissioner cites only two pages out of more than 150 pages of Dr. Ali's treatment records. (ECF No. 25 at 3.) However, review of Dr. Ali's treatment records in their entirety confirms that the ALJ's citation was an accurate representation of Dr. Ali's observations at nearly every one of Plaintiff's appointments from 2010 through 2015. That is, in almost every visit, Dr. Ali's treatment notes include: clinical observations indicating a slight restriction in range of motion in Plaintiff's cervical and thoracic spine and a slight to

moderate restriction in range of motion in Plaintiff's lumbar spine; a notation that Plaintiff's symptoms were well controlled with her treatment and medication, often providing 70% to 90% relief; and a notation that Plaintiff could perform her daily activities "well." (*See* AR 309-317, 321-365, 376-385, 456-509.) Plaintiff has not pointed to any particular treatment note that contains clinical findings contradicting the ALJ's conclusion.

The ALJ provided an additional reason for rejecting Dr. Ali's opinions, namely, he found them "quite conclusory, providing very little explanation of the evidence relied on in forming these opinions." (AR 28.) Generally, an ALJ may discredit treating a physician's opinion on the ground that it is conclusory or brief. *See Batson*, 359 F.3d at 1195. Here, however, Dr. Ali's opinions were detailed and his report included explanations for the underlying bases for his opinions. (*See* AR 298-308.) Notwithstanding the possible infirmity of this reason, any error is harmless because the ALJ's remaining reason was a "specific and legitimate" basis for rejecting Dr. Ali's opinions. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (despite the invalidity of one or more of an ALJ's stated reasons for discounting a claimant's credibility, the court properly may uphold the ALJ's decision where the ALJ stated sufficient valid reasons); *see generally Tommasetti*, 533 F.3d at 1038 (court will not reverse an ALJ's decision when it is clear from the record that the ALJ's error is inconsequential to the ultimate nondisability determination).

**2. The ALJ provided legally sufficient reasons for discounting Plaintiff's subjective complaints.**

Plaintiff contends that the ALJ failed to provide adequate reasons for discounting her subjective complaints. For the following reasons, Plaintiff's contention lacks merit.

### a. Plaintiff's Testimony and Statements

Plaintiff testified that she was unable to work due to neck and back pain. As a result of her pain, she was unable to sit or stand for very long. (AR 43.) Plaintiff also suffered from daily headaches, which she rated between 8 and 10 in terms of severity. (AR 45.) Plaintiff received trigger point injections once a month for her neck and back pain. She explained that the shots provided "some relief" from pain for about a week and helped her to move more freely. (AR 47.) The shots also helped relieve her headaches. (AR 47-48.) Plaintiff suffered anxiety as a result of the pain. She took Xanax for anxiety and "stress in general." (AR 48-49.) When her pain diminished, her anxiety also decreased. (AR 49.) According to Plaintiff, she could walk a couple of blocks, stand for 20 minutes at a time, sit for 30 to 40 minutes at a time, and lift and carry nothing heavier than a gallon of milk. (AR 40.)

Plaintiff completed a Function Report in January 2014. In the report, Plaintiff indicated that due to neck and back pain, she was unable to sit or stand for long periods of time, unable to do repetitive motions, unable to use a computer for a long period of time, unable to lay down for a long time, which results in a lack of sleep. The pain and lack of sleep caused Plaintiff to suffer anxiety. Plaintiff also had difficulty concentrating due to the pain and the side effects of medication. (AR 230.)

According to the Function Report, Plaintiff's daily activities included "making a quick breakfast," babysitting her grandkids for a few hours three times a week, making a sandwich for lunch, paying bills on the computer, walking two houses away to visit her elderly parents, making a quick dinner, watching TV, praying, and going to bed. (AR 231.) For a few hours three times a week, Plaintiff babysat her two grandchildren, ages six months old and four years. These babysitting duties included changing diapers and feeding the baby formula and baby food, fixing breakfast and lunch for the four-year old, and helping the four-year old with workbooks. (AR 231.) Plaintiff explained that her sister and son helped her with carrying the baby, changing diapers, and meals. (AR 231.) At the end of the form, Plaintiff wrote that her son

lives with her and "does the majority of the housework & all yard work, much of the cooking & cleaning & helps with the babysitting." (AR 237.) Plaintiff had no problems performing any personal care. (AR 231.)

Plaintiff prepared her own meals consisting of simple foods, frozen dinners, scrambled eggs, and instant soup. (AR 232.) She was able to do household chores such as "light dusting," making her bed, washing a few dishes, wiping counters, doing a few loads of laundry, trimming roses, watering plants, and taking out the trash. (AR 232.) She went outside daily or every other day. She is able to walk and drive a car. (AR 233.) Plaintiff also went grocery shopping once a week. (AR 233.)

As for hobbies and interests, Plaintiff reported that she does word puzzles and uses a computer for short periods of time. She also does light gardening. She indicated that she was able to do these things "ok" because it was "hard to concentrate." (AR 234.) Plaintiff reported that she spent time with others having coffee or lunch, she visited her parents daily or every other day, and went to church on Sundays. (AR 234.)

Plaintiff estimated that she could walk for five to ten minutes before needing to rest, she could pay attention for thirty minutes at a time, she was able to finish what she started a "majority of the time," and rated her ability to follow written or spoken instructions "fair" and "ok," respectively. (AR 235.) Finally, Plaintiff indicated that her medication caused drowsiness and stomach upset. (AR 237.)

**b. Relevant Law**

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's subjective symptom statements. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

The parties agree that Social Security Ruling 16-3P applies to this case. SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2.

The Commissioner suggests that the new SSR casts doubt upon the Ninth Circuit's clear and convincing standard. (ECF No. 24 at 10 n.9.) The Ninth Circuit, however, has found the changes in SSR 16-3P to be largely stylistic and held that SSR 16-3P is consistent in substance with Ninth Circuit precedent that existed before the effective date. *Trevizo*, 871 F.3d at 678 n.5. Accordingly, the Court relies upon Ninth Circuit authority governing the proper method for assessing a claimant's credibility.

### c. Analysis

The ALJ did not reject all of Plaintiff's subjective complaints. In particular, although the ALJ considered Dr. Bernabe's opinion that Plaintiff's impairments resulted in no functional limitations to be consistent with the medical record, he determined that Plaintiff's complaints of pain were entitled to at least some weight. (AR 28.) The ALJ provided the following reasons for finding Plaintiff's subjective complaints not fully credible.

### (i) Plaintiff's allegations were inconsistent with the objective medical evidence.

The ALJ summarized the objective medical evidence and concluded that it did not support the extent and severity of Plaintiff's alleged symptoms. (AR 25-27.) As set forth in detail above, the ALJ discussed all of the medical evidence in the record, including the diagnostic tests and clinical observations by Plaintiff's treating physician as well as the consultative examining physician and concluded that the medical evidence showed essentially mild impairment. The ALJ's summary of the evidence was accurate and complete. Accordingly, substantial evidence supports the ALJ's conclusion that the medical evidence did not support Plaintiff's allegations of debilitating pain.

So long as it was not the sole basis for his credibility determination, the ALJ was entitled to rely upon the lack of objective medical evidence to discredit Plaintiff's subjective complaints. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (conflicts between a claimant's

testimony and the objective medical evidence in the record can undermine a claimant's credibility). Here, the ALJ did not rely solely upon the lack of objective medical evidence, but provided the following additional reasons for discrediting Plaintiff's testimony.

### (ii) Plaintiff's pain was controlled with medication and treatment.

The ALJ noted that Plaintiff's pain was controlled with medication and trigger point injections. (AR 26, 27-28.) As set forth above, the record confirms that Dr. Ali consistently considered Plaintiff's symptoms "well controlled" and that Plaintiff repeatedly reported that the injections and medications provided her with as much as 70% to 90% pain relief. Furthermore, the ALJ pointed out that according to Plaintiff's medical records, she was able to perform activities of daily living "well." (AR 26.) As discussed above, the ALJ's characterization of the record is supported by numerous of Dr. Ali's treatment notes. Thus, the ALJ was entitled to rely upon evidence that Plaintiff's pain was well controlled and she was able to perform her daily activities "well" to support the inference that Plaintiff's pain was not as debilitating as Plaintiff alleged. *See Bailey v. Colvin*, 659 Fed. App'x 413, 415 (9th Cir. 2016) (ALJ appropriately noted that many of claimant's impairments had been alleviated by effective medical treatment, and this was inconsistent with claimant's alleged total disability); *Warre v. Comm'r of the Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."); *Gontes v. Astrue*, 913 F. Supp. 2d 913, 921 (C.D. Cal. 2012) (ALJ properly discounted subjective complaints where claimant's "testimony conflicted with the evidence that her medical conditions only minimally affected her ability to work and that her pain, diabetes, and asthma were well-controlled with medication and other treatments").

### (iii) Any error in the ALJ's recitation of other reasons to discredit Plaintiff was harmless.

The ALJ found that Plaintiff's admitted daily activities were not consistent

with the level of alleged pain and symptoms. In particular, the ALJ noted that Plaintiff was able to prepare meals, make the bed, wash dishes, do laundry, trim roses, water plants, take out the trash, use the computer, drive, shop, and visit her parents. He reasoned that the physical and mental abilities required to perform these activities diminished the credibility of Plaintiff's alleged functional limitations. (AR 28.) In addition, the ALJ noted that Plaintiff had engaged in work activity after the alleged onset date. Although that work activity did not constitute substantial gainful activity, the ALJ found that it suggested that Plaintiff's daily activities have been, at least at times, not as limited as she claimed. (AR 28.)

While engaging in daily activities that are incompatible with the severity of alleged symptoms alleged may support an adverse credibility determination, *Ghanim*, 763 F.3d at 1165, the ALJ was required to identify which particular activity he considered to be incompatible with which of Plaintiff's allegations. *See Burrell*, 775 F.3d at 1138 (error where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony"). The ALJ did not do so here. As a result, the Court cannot determine whether the ALJ's reliance upon daily activities to undermine Plaintiff's credibility was supported by substantial evidence. *See Garrison*, 759 F.3d at 1016 (only if claimant's level of activity were inconsistent with her claimed limitations would those activities have any bearing on her credibility).

The ALJ also found that Plaintiff had "not generally received the type of medical treatment one would expect of a totally disabled individual," observing that Plaintiff had a history of "relatively infrequent tips to the doctor" and other than trigger point injections, had received routine and/or conservative treatment. (AR 27.) The ALJ's characterization of Plaintiff's treatment as infrequent or conservative is not supported by the record. Rather, the record demonstrates that Plaintiff saw Dr. Ali every four to six weeks, was prescribed narcotic pain medication, and received trigger point injections on almost every visit from approximately 2010 through 2015. *See*

*Garrison*, 759 F.3d at 1015 n. 20 (observing that epidural steroid shots not likely to qualify as conservative treatment); *Lapierre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative). Indeed, the ALJ recognized that trigger point injections are not considered conservative treatment. (AR 27.)

Nevertheless, even if these two reasons for finding Plaintiff less than fully credible were improper, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

**************

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 9/24/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE